UNITED STATES DISTRICT COURT
DISTRICT OF NEVADA

Bobby Richards,

        Plaintiff

v.

William Hutchings, et al.,

        Defendants

Case No. 2:21-cv-00209-CDS-EJY

**Order Granting Defendant's Motion for Summary Judgment, and Closing Case**

[ECF No. 29]

       This is a 42 U.S.C. § 1983 civil rights action brought by incarcerated pro se plaintiff Bobby Richards, alleging that defendant Dr. Henry Landsman[1] was deliberately indifferent to his medical needs while he was housed at the Southern Desert Correctional Center (SDCC). On March 1, 2023, Dr. Landsman moved for summary judgment, arguing that Richards failed to exhaust his administrative remedies prior to filing this suit, and that in either event, he is entitled to qualified immunity. ECF No. 29. Any opposition to the motion was due by March 22, 2023. *See id.*; *see also* Local Rule 7-2(b) ("The deadline to file and serve any points and authorities in response to a motion for summary judgment is 21 days after service of the motion."). As of the date of this order, no opposition has been filed. Because I find that Richards failed to exhaust his administrative remedies as required by the Prison Litigation Reform Act (PLRA), defendant Dr. Landsman's motion for summary judgment is granted.

I.    **Legal standard**

       Summary judgment is appropriate when the pleadings and admissible evidence "show that there is no genuine issue as to any material fact and that the movant is entitled to judgment

---

[1] Pursuant to the screening order, only claim I against defendant Dr. Henry Landsman and claim II against defendant Sonja Carillo were allowed to proceed. ECF No. 6 at 6. Carillo was never served. *See* ECF No. 21 (unexecuted summons for Carillo). On June 30, 2022, Magistrate Judge Elayna J. Youchah issued an order to show cause as to why Carillo should not be dismissed for lack of service. ECF No. 22. Richards never responded to the show-cause order. Carillo is hereby dismissed without prejudice from this action under Fed. R. Civ. P. 4(m).

as a matter of law." *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (citing Fed. R. Civ. P. 56(c)). The court's ability to grant summary judgment on certain issues or elements is inherent in Federal Rule of Civil Procedure 56. *See* Fed. R. Civ. P. 56(a). "By its very terms, this standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986). A fact is material if it could affect the outcome of the case. *Id.* at 249. At the summary judgment stage, the court must view all facts and draw all inferences in the light most favorable to the nonmoving party. *Kaiser Cement Corp. v. Fischbach & Moore, Inc.*, 793 F.2d 1100, 1103 (9th Cir. 1986). The movant need only defeat one element of a claim to garner summary judgment on it because "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex Corp.*, 477 U.S. at 322.

District courts may grant an unopposed motion for summary judgment if the movant's papers sufficiently support the motion and do not present on their face a genuine issue of material fact. *See Henry v. Gill Indus., Inc.*, 983 F.2d 943, 950 (9th Cir. 1993). The failure to oppose a motion for summary judgment does not permit the court to enter summary judgment by default, but the lack of a response is not without consequences. *Heinemann v. Satterberg*, 731 F.3d 914, 917 (9th Cir. 2013). As FRCP 56(e) explains, "[i]f a party fails . . . to properly address another party's assertion of fact[,] . . . the court may . . . consider the fact undisputed for purposes of the motion" and "grant summary judgment if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it." Fed. R. Civ. P. 56(e)(2), (3); *Heinemann*, 731 F.3d at 917. But the nonmoving party's failure to respond does not absolve the moving party from its affirmative duty to demonstrate that it is entitled to judgment as a matter of law. *Martinez v. Stanford*, 323 F.3d 1178, 1182–83 (9th Cir. 2003).

II.     Background

    A.  Richards' allegations

In his amended complaint,[2] Richards alleges that another doctor at Ely State Prison (ESP) had previously ordered him to have surgery to repair his anterior cruciate ligament (ACL) injury.[3] ECF No. 5 at 5. There is no dispute that he was subsequently transferred from ESP to SDCC on February 20, 2019. *See id.* (references transfer); *see also* Richards' Bed Assignment History, Def.'s Ex. A, ECF No. 29-1. According to Richards, upon arrival at SDCC, Dr. Landsman refused to refer him for the previously ordered surgery. *See generally* ECF No. 5 at 5. He further alleges that Dr. Landsman diagnosed him with plantar fasciitis and over-pronation, and was aware of his medical issues, including severe pain in his left knee and foot and issues walking and standing. *Id.* Richards alleged that his pain was ongoing and worsening. *Id.* As a result, Richards brought this action, claiming that Dr. Landsman was deliberately indifferent to his medical needs in violation of the Eighth Amendment. *Id.*

    B.  Dr. Landsman's motion for summary judgment

Dr. Landsman disputes almost all of Richards' allegations. He contends that there is no evidence showing that Richards was referred for surgery. ECF No. 29 at 6. Instead, he asserts that the only relevant ESP document regarding Richards was an orthopedic referral that neither ordered nor referred Richards for surgery. *See* Referral, Def.'s Ex. M, ECF No. 31-2. Dr. Landsman also refutes that he diagnosed Richards with plantar fasciitis and over-pronation, noting that no medical record supports this allegation. ECF No. 29 at 6. Indeed, records show the ESP doctor ordered Richards to receive "high ankle support" and "good arch support shoes" for a torn ACL—not surgery. Medical Order for Richards dated 12/11/2018, Def.'s Ex. E, ECF No. 31-3.[4]

---

[2] Unless otherwise noted, the court only cites to the amended complaint to provide context to this action, not to indicate findings of fact. ECF No. 5.

[3] Unlike a motion to dismiss, a court does not accept the factual allegations of a complaint as true when resolving a motion for summary judgment. *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992) (discussing that when resolving motions to dismiss a court takes as true all material allegations of the complaint and construes the complaint in favor of the plaintiff).

[4] That document is stamped "pending approval" in red.

3

1 Richards' progress notes also reveal that no surgery was ordered. A note from April 17, 2019,
2 shortly after Richards arrived at SDCC, provides that "Dr. Wulf" did not indicate an operation
3 as necessary, and Dr. Landsman concurred. Progress Notes, Def.'s Ex. G, ECF No. 31-4 at 10. Also
4 on April 17, 2019, Dr. Landsman ordered a neoprene knee brace for Richards, restricted him to a
5 lower bunk, and prescribed "IBU" medication,[5] and other orders that are difficult to discern.
6 Orders, Def.'s Ex. H, ECF No. 31-5 at 7.

Progress notes reflect that Richards was seen numerous times between 2019 and 2022. *See generally* Progress Notes, Def.'s Ex. G, ECF No. 31-4. For example, in May of 2019, Richards was given a steroid injunction and diagnosed with osteoarthritis in his left knee. Granados' Decl., Def.'s Ex B, ECF No. 29-2 at 3, ¶ 7. Later, in August of 2019, Dr. Landsman ordered a knee x-ray and another prescription for Meloxicam and Richards was directed to follow-up as needed. Progress Notes, Def.'s Ex. G, ECF No. 31-4 at 6. In June of 2021, Richards was seen by Dr. Wulff, during which it was recommended that he get another steroid injection; Richards advised that he did not want another injection because the prior one did not work. Granados' Decl., Def.'s Ex B, ECF No. 29-2 at 3, ¶ 9. Richards' records from March and June of 2022, which are slightly difficult to read, show that Richards was diagnosed with flat-footedness and an ACL injury. Progress Notes, Def.'s Ex. G, ECF No. 31-4 at 2. The June 28, 2022 note reflects that Richards' knee was "extremely painful" and swollen. *Id.* No record before the court demonstrates that Richard was ever referred for surgery. Richards filed this suit on February 8, 2021. ECF No. 1.

III.     Discussion

Dr. Landsman moves for summary judgment in his favor, arguing that Richards' claim against him is barred because he failed to exhaust his administrative remedies prior to filing suit. ECF No. 29 at 9–11. I agree.

---

[5] The court interprets "IBU" as ibuprofen.

1    "In an effort to address the large number of prisoner complaints filed in federal court, Congress enacted the [PLRA]." *Jones v. Bock*, 549 U.S. 199, 202 (2007) (citing 42 U.S.C. § 1997e). Under the PLRA, a prisoner may not file any section 1983 civil rights suit unless they have exhausted the administrative remedies at the facility. 42 U.S.C. § 1997e(a); *Rodriguez v. Cnty. of Los Angeles*, 891 F.3d 776, 792 (9th Cir. 2018). The exhaustion requirement gives an agency the opportunity to correct its own mistakes before being dragged into federal court, and it promotes greater efficiency and economy in resolving claims. *McBride v. Lopez*, 807 F.3d 982, 987 (9th Cir. 2015). However, "a prisoner is excused from the exhaustion requirement in circumstances where administrative remedies are effectively unavailable, including circumstances in which a prisoner has reason to fear retaliation for reporting an incident." *Rodriguez*, 891 F.3d at 792 (citing *McBride*, 807 F.3d at 987). "Failure to exhaust under the PLRA is 'an affirmative defense [that] the defendant must plead and prove.'" *Albino v. Baca*, 747 F.3d 1162, 1166 (9th Cir. 2014) (quoting *Jones*, 549 U.S. at 204).

   Exhaustion "demands compliance with an agency's deadlines and other critical procedural rules because no adjudication system can function effectively without imposing some orderly structure on the course of its proceedings." *Woodford v. Ngo*, 548 U.S. 81, 90-91 (2006). In Nevada, the remedies available to inmates are promulgated under Nevada Department of Corrections Administrative Regulation 740 (AR 740). AR 740's purpose is to "set forth the requirements and procedures of the administrative process that [Nevada Department of Corrections (NDOC)] inmates must utilize to resolve addressable grievances and claims including . . . any [] tort or civil rights claim relating to conditions of confinement." *Welch v. Liggett*, 2023 WL 158603, at *3 (D. Nev. Jan. 11, 2023). "An inmate whose grievance is denied in its entirety may appeal the grievance to the next level." *Id.* The grievance structure is essentially a multi-level dispute resolution mechanism, under which an inmate must satisfy each level's substantive and procedural requirements before filing a higher-level grievance. *Id.* It requires inmates to first pursue resolution via alternative means, "such as discussion with staff or

submitting an inmate request form." *Id.* Once an inmate has exhausted alternative means, he may file an informal grievance. *Id.* If that fails to provide the requested relief, the inmate may file a first-level grievance, and if that fails, a second-level grievance. *Id.* An inmate exhausts his administrative remedies either after a denial of the second-level grievance, or "if the [g]rievance is '[g]ranted' at any level." *Id.*

"The Ninth Circuit instructed in *Albino v. Baca* that a summary-judgment motion is the proper procedural device to resolve PLRA exhaustion questions." *Hobson v. Clark Cnty.*, 2019 WL 1442171, at *3 (D. Nev. Mar. 31, 2019) (citation omitted). It is "the defendant's burden is to prove that there was an available administrative remedy and that the prisoner did not exhaust that available remedy." *Albino*, 747 F.3d at 1172. If this is accomplished, "the burden shifts to the prisoner to come forward with evidence showing that there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him." *Id.* "If undisputed evidence viewed in the light most favorable to the prisoner shows a failure to exhaust, a defendant is entitled to summary judgment under Rule 56." *Id.* at 1166.

Dr. Landsman asserts that Richards never filed a grievance regarding his alleged need for surgery or Dr. Landsman's alleged denial of such surgery. ECF No. 29 at 10–11. The record corroborates this. Richards filed six grievances since he became an NDOC inmate in May of 2016. *See generally* Inmate Grievance History, Def.'s Ex. M, ECF No. 29-4. Most of those grievances comprised Richards' grieving issues regarding work/credit time[6] and being denied the common fare diet.[7] While Richards did file one grievance related to his knee issues in October of 2020, this grievance was about being denied access to medical shoes. *See id.* at 4 (Grievance number 20063109330). While Dr. Landsman is mentioned in the grievance, nowhere in it does Richards complain that he was denied knee surgery, either by Dr. Landsman or anyone else. *See id.* While a grievance "need not include legal terminology or legal theories," it must "alert the prison to the nature of the wrong for which redress is sought." *Sapp v. Kimbrell*, 623 F.3d 813

---

[6] Def.'s Ex. M, ECF No. 29-4 at 2 (Grievance number 20063139429).
[7] *Id.* at 2–3 (Grievance numbers 20063116665; 20063114651; 20063114649; 20063114633).

(9th Cir. 2010) (quoting *Griffin v. Arpaio*, 557 F.3d 1117, 1120 (9th Cir. 2009)). Richards' October 2020 grievance did not adequately alert the prison or Dr. Landsman to the "wrong" underlying his instant Eighth Amendment claim nor accordingly give them an opportunity to resolve the issue prior to him filing suit. Indeed, medical shoes and surgery are very different things. For that reason, Richards failed to meet the very first step of exhausting the grievance process for the instant claim: filing a grievance.

As Richards failed to respond to this motion, there are no explanations or contrary arguments before the court at this time addressing this issue. However, based on an independent assessment of the record, I also note that there is no readily apparent evidence suggesting that the administrative remedies were effectively unavailable to Richards as a matter of law. Consequently, I find that Richards has not exhausted his administrative remedies and his Eighth Amendment claim against Dr. Landsman is thus barred pursuant to the PLRA. Because I grant summary judgment to Richards on failure to exhaust, I do not address Dr. Landsman's other summary judgment arguments on the merits.[8]

## IV. Conclusion

IT IS HEREBY ORDERED that defendant Sonja Carillo is dismissed from this action.

IT IS FURTHER ORDERED that the Dr. Landsman's motion for summary judgment [ECF No. 29] is GRANTED.

The Clerk of Court is kindly instructed to enter judgment accordingly and to close this case.

DATED: January 16, 2024

_____
Cristina D. Silva
United States District Judge

---

[8] The court does note though that "[a] prison official is deliberately indifferent . . . only if the official 'knows of and disregards an excessive risk to inmate health and safety.'" *Colwell v. Bannister*, 763 F.3d 1060, 1066 (9th Cir. 2014) (quoting *Toguchi v. Chung*, 391 F.3d 1051, 1057 (9th Cir. 2004)). "This requires more than ordinary lack of due care . . . the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* (cleaned up). The undisputed record shows that Richards was treated numerous times between 2019 and 2022, and there is no evidence demonstrating any excessive risk to Richards' health or safety.